J-S27030-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| YURI MONROY MONROY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MIGUEL LOPEZ CHAVEZ | : | No. 1033 EDA 2025 |

Appeal from the Order Entered March 18, 2025
In the Court of Common Pleas of Lehigh County Civil Division at No(s):
2024-FC-1096

BEFORE:   STABILE, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.:                **FILED OCTOBER 8, 2025**

Yuri Monroy Monroy (Mother) appeals from the order entered by the Lehigh County Court of Common Pleas which granted her sole legal and physical custody of her now 18-year-old son, B.L.M. (the Child),[1] whose father is Miguel Lopez Chavez (Father).  The order also denied Mother's petition for special relief, in which she requested that the trial court make predicate factual findings that would enable the Child to petition the United States Citizenship and Immigration Services (USCIS) for Special Immigrant Juvenile Status

---

[*] Former Justice specially assigned to the Superior Court.

[1] Although the Child turned 18 years of age in May 2025, this appeal is not moot.  The federal Special Immigrant Juvenile Status statute affords relief in a proper case until a child reaches the age of 21.  Accordingly, we conclude that the issue is not moot, and the Lehigh County Court of Common Pleas has jurisdiction to make the requested findings.  ***See Orozco v. Tecu***, 284 A.3d 474, 479 n.1 (Pa. Super. 2022).

(SIJS). After careful review, we reverse and remand for entry of an order containing predicate SIJS determinations for the Child.

We discern the following factual and procedural history from the certified record. The Child was born in May 2007 in Guatemala. Who he lived with in his early life is unclear from the record. However, according to Mother's custody complaint, the Child began living with his Paternal Grandparents in Guatemala in 2013.[2] At some point, Mother came to live in the United States.

On September 3, 2023, the Child entered the United States at the United States/Mexico border near Rio Grande City, Texas. From September 3 to September 21, 2023, the Child was held by the United States Department of Health and Human Services' Office of Refugee Resettlement. Thereafter, the Office released the Child into Mother's custody. The Child then resided in Lehigh County, Pennsylvania with Mother, Mother's long-term boyfriend, Mother's brother, and Mother's other two minor children (the Child's half-siblings).

---

[2] The record contains conflicting information regarding whether the Child was living with his Paternal or Maternal Grandparents in Guatemala. Mother's custody petition stated that the Child had been living with his Paternal Grandparents. Mother also testified at the custody hearing that the Child was previously living with his Paternal Grandparents. However, the trial court referred to these individuals as the Child's Maternal Grandparents in its custody opinion and Appellate Rule 1925(a) opinion. Likewise, Mother's appellate brief uses the term "Maternal Grandparents." Nevertheless, based on Mother's custody petition and her uncontradicted testimony, we refer to these individuals as the Child's Paternal Grandparents. We also note that whether the Child was living with his Paternal or Maternal Grandparents in Guatemala has no bearing on our disposition.

On October 23, 2024, Mother filed a custody complaint requesting sole legal and physical custody of the Child. Mother also filed a petition for special relief requesting that the trial court make specific factual findings relevant for SIJS. The court held a custody hearing on March 14, 2025. Mother was present and represented by counsel. Mother, Mother's boyfriend, and the Child testified; an interpreter facilitated their testimony. Father was not present at the hearing. Mother's custody complaint stated that Father's last known residence was in Guatemala. However, it was revealed through service of process and testimony at the hearing that Father was in New York when the custody petition was served.[3] After the hearing, the court issued a custody

_____

[3] We note that "a parent outside the Commonwealth is entitled to notice and an opportunity to be heard in accordance with our law or the foreign state's law, but Pennsylvania does not require the absent parent to participate in the proceedings in order for our courts to have jurisdiction over the custody action." *Velasquez v. Miranda*, 321 A.3d 876, 884 n.2 (Pa. 2024) (internal quotation marks and citations omitted). During the hearing, the trial court called to see if Father was present in the courtroom and asked Mother's attorney if he had service on Father. *See* N.T., 3/14/25, at 5. Mother's attorney stated that Father "was previously served and accepted service on the 20th of November [2024]." *Id.* at 5-6. The certified record contains an acceptance of service signed by Father on November 20, 2024, stating that he was accepting service of the custody complaint, petition for special relief, and a November 11, 2024, court order. *See* Acceptance of Service, 12/10/24. The acceptance document notes that there was a custody conference scheduled in December 2024 and states that Father received the notice on November 20 in the state of New York. *See id.* Within that document, Father also waived all rights to participate in the custody matter and stated that he did not wish to participate in any further proceedings related to the custody matter. *See id.*; *see also* N.T. at 6 (Mother's counsel stating, "on that service, [Father] had indicated that he wished to waive all rights to participate in the matter.").

order granting Mother sole legal and physical custody of the Child but denying her petition for SIJS findings.

Mother timely filed this appeal. She presents the following question for our review:

> 1. Is [Mother] entitled to a Special Immigrant Juvenile Status ("SIJS") predicate order containing the language required for her Child B.L.M. to receive Special Immigrant Juvenile Status?

Mother's Brief at 5.

We first clarify that Mother's issue implicates only the part of the trial court's order denying her request for predicate judicial findings to support SIJS, not the court's decision to grant her sole legal and physical custody of the Child.

Last year, our Supreme Court discussed the applicable standard and scope of review for SIJS issues that arise in the context of custody proceedings. *See Velasquez v. Miranda*, 321 A.3d 876, 891 (Pa. 2024). The High Court provided the following guidance:

> When considering pure questions of law, our standard of review is *de novo* and our scope of review is plenary. We generally do not "interfere with the trial court's factual conclusions unless they are unreasonable in view of the trial court's factual findings and thus represent an abuse of discretion." Likewise, while we have a broad scope of review, we cannot nullify the fact-finding function of the judge presiding over the custody hearing or their ability to make credibility determinations.

*Id.* (internal citations omitted). "Thus, we must conduct a plenary review of the instant certified record to ascertain whether the trial court's conclusions

- 4 -

are reasonably supported by its factual findings." ***Zayas v. Brizuela***, 334 A.3d 363, *2 (Pa. Super. 2025) (unpublished memorandum). Additionally, we must determine, as a matter of law, whether Mother has established sufficient evidence to support the predicate SIJS findings.

SIJS "is an immigration classification that provides humanitarian protection for certain minors located in the United States." ***Velasquez***, 321 A.3d at 882 (citations omitted). Pursuant to the Immigration and Nationality Act, SIJS means, in relevant part, a child immigrant who is present in the United States, and:

> (i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;
>
> (ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and
>
> (iii) in whose case the Secretary of Homeland Security consents to the grant of [SIJS] [. . .]

8 U.S.C. § 1101(a)(27)(J)(i-iii).

Thus, SIJS allows immigrant children to seek lawful residency in the United States in order to remain where their needs are best met and avoid deportation to their country of nationality or last habitual residence. ***Id.*** SIJS

requires decisions at both the state and federal levels.  Ultimately, the USCIS, a federal agency of the United States Department of Homeland Security, determines whether to grant SIJS to a child.  **See Velasquez**, 321 A.3d at 883 (citation omitted).  However, the USCIS application process requires, *inter alia*, a state court order that includes predicate judicial determinations.  **See id.** (citation omitted).

The state court must be one that has "jurisdiction under State law to make judicial determinations about the dependency and/or custody and care of juveniles."  **Id.** (citation omitted).  The state court's order must include dependency or custody, parental reunification, and best interest determinations.  **See id.** (citation omitted).

Specifically, the state court must decide whether: 1) "reunification with 1 or both of the [child's] parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law" and 2) "it would not be in the [child's] best interest to be returned to the [child's] or parent's previous country of nationality or country of last habitual residence."  8 U.S.C. § 1101(a)(27)(J)(i)-(ii); **see Velasquez**, 321 A.3d at 883.  Once a state court issues an order with those requisite findings, the child presents that order to the USCIS to seek SIJS.  Thus, the USCIS ultimately decides whether to grant a child SIJS; the state court does not make an immigration decision, and its determinations do not grant or guarantee SIJS to the child.  **See Velasquez**, 321 A.3d at 895 (citing **Orozco v. Tecu**, 284 A.3d 474, 476-77 (Pa. Super. 2022) (further citation omitted)).

Our Supreme Court has provided guidance on the appropriate burden of proof in this context. Petitioners must prove their entitlement to predicate SIJS findings by a preponderance of the evidence. *See id.* at 906 (collecting cases). Further, a state court is expressly authorized by federal law to issue an SIJS order when:

(1) The court has exercised its jurisdiction as authorized by Pennsylvania law to determine the dependency and/or custody and care of a child;

(2) Reunification with one or both of the child's parents is not viable due to abuse, abandonment, neglect, or a similar basis under Pennsylvania law; and

(3) It is not in the child's best interest to be returned to the child's or their parent's country of nationality or last habitual residence.

*Id.* at 895 (citations omitted).

Applying our Supreme Court's guidance in *Velasquez* to this case, and, thus, conducting our own "comprehensive review of the record," reveals that the Child is entitled to predicate SIJS determinations. *See id.* at 906 (citation omitted). We will address each statutory element of the SIJS analysis in turn.

Here, there is no question that the first element was met because the trial court properly exercised jurisdiction over this custody case and awarded Mother sole custody of the Child. Our Supreme Court confirmed that a court exercising custody jurisdiction is appropriate to issue predicate SIJS findings. *See id.* at 903 (citing 8 C.F.R. §§ 204.11(a), (c) ("a juvenile court" is a court with "jurisdiction under State law to make judicial determinations about the

dependency and/or custody and care of juveniles," and must make SIJ[S] determinations "under" or "in accordance with State law")). Thus, Mother could appropriately seek SIJS determinations from the trial court on the Child's behalf, and the court was empowered to adjudicate Mother's SIJS petition. *See id.* at 882 ("[P]ursuant to federal SIJ[S] law, a child who is the subject of custody proceedings that result in sole custody being awarded to the parent presently in the United States may seek SIJ[S] determinations in that custody proceeding."). Our Supreme Court determined that one avenue to SIJS relief is a court-ordered, one-parent custodial arrangement. *See id.* at 899-900 (collecting cases from numerous jurisdictions).

Further, Mother's petition for special relief put a request for SIJS findings directly before the trial court. At the end of the hearing, Mother's counsel reiterated that "as per the Petition for Special Relief, there is some additional language that we would like included in the order, basically related to the [F]ather's abandonment of [C]hild, in addition to the findings of best interests." N.T., 3/14/25, at 32. The court responded "Okay." *Id.* Mother's counsel then stated, "And if Your Honor would need any additional testimony, I can certainly call any witnesses if you had --" and the court interjected by saying, "Yeah, no." *Id.* Thus, the first element of the SIJS analysis was met in this case.

On the second element, Mother argues that the Child's reunification with Father is not viable due to abandonment. She presented uncontested and credible testimony that the Child has never resided with Father, and Father

has never contacted or provided support for the Child. *See* Mother's Brief at 10. Mother asserts that the trial court found Mother's, the Child's, and Mother's boyfriend's testimony to be credible, and made no adverse credibility findings. *Id.* at 11.

Our review of the record confirms this. The court explicitly found that Father abandoned the Child and awarded sole custody to Mother. The court specifically stated, "It appears that Father has never cared for the Child and, thus, has abandoned the Child." Trial Court Opinion (T.C.O.), 3/18/25, at 4. Separately, the court stated, "there is no evidence that Father ever cared for the Child." *Id.* at 3. The court also acknowledged, "[d]ue to the fact that Mother has been caring for the Child and Father has not." *Id.* at 5. Additionally, as noted, the court awarded sole legal and physical custody of the Child to Mother. *See* Final Custody Order, 3/18/25, at 1-2.

Further, the trial court specifically found "the following witnesses credible: Mother, Child, [and Mother's boyfriend]." T.C.O. at 2. "[T]here is no reason to disrupt [the trial court's] credibility determination[s] and factual findings that led to its custody award as they are amply supported by the record." *Velasquez*, 321 A.3d at 906. Mother testified that the Child has never resided with Father, and Father has never provided any money or support for the Child. *See* N.T. at 11-12, 17. Mother also testified that although she, the Child, and their family go on vacation, to church, and to the park, the Child has never done any of those things with Father. *See id.* at

13. Father did not make Mother or the Child aware of where he was living, nor did he reach out to talk to the Child. *See id.* at 16.

Mother's boyfriend corroborated her testimony and stated that they provide everything for the Child. *See id.* at 24. Conversely, Father never tries to call the Child or communicate with him. *See id.* Lastly, the Child confirmed that he does not remember the last time he saw Father or had a conversation with him. *Id.* at 29-30. The Child also testified that Father has never given him any money or support. *Id.* at 29. Additionally, we note that when served with the custody complaint, Father indicated that he did not wish to participate in any further proceedings related to the custody matter. *See id.* at 6.

Thus, the court's own findings, along with the uncontradicted testimony from the witnesses that the court deemed credible, showed that Father had abandoned the Child. Therefore, the second element of the SIJS analysis was met in this case because reunification with one of the Child's parents is not viable due to abandonment.

Next, we turn to the third element, whether it was in the Child's best interest to be returned to Guatemala, the Child's country of nationality and last habitual residence. Mother argues that while the Child lived in Guatemala with Paternal Grandparents, conditions were dangerous, with assaults, murders, and poor access to education. *See* Mother's Brief at 11. Conversely, the Child now thrives in Pennsylvania and wishes to remain in Mother's care. *Id.*

Here, as in **Velasquez**, "the custody court's best interest analysis and award of sole custody to Mother establish it is in [the Child's] best interest not to be returned to Guatemala." **Velasquez**, 321 A.3d at 908. Again, the trial court found Mother, Mother's boyfriend, and the Child to be credible witnesses. Mother's uncontradicted testimony was that there were dangerous situations in Guatemala when the Child lived there, including murders, robberies, and assaults. N.T. at 17.

Mother's boyfriend testified that it was very difficult for the Child to be so far away, and Guatemala is not a safe environment. **See id.** at 25. Mother's boyfriend stated that sometimes the children go to school in Guatemala, but sometimes they do not. **Id.**

The Child testified that his life in Guatemala was very difficult, and it was very difficult for him to go to school. **Id.** at 28. He also stated that there were dangerous situations in Guatemala including assaults and homicides, but he felt safe where he was living now. **See id.** at 29.

Mother testified that the United States was better than Guatemala for education. **See id.** at 17. She also stated that she thought the Child was really enjoying his time with her. **See id.** at 18. Mother's boyfriend testified that the Child is adjusting to life in the United States well and really likes it. **See id.** at 22. The Child testified that he preferred living in the United States with Mother. **Id.** at 29. Additionally, Mother's brother lived in the family's house, along with Mother's other two children. **See** T.C.O. at 4-5. The Child testified that he gets along well with Mother, Mother's boyfriend, and his two

half-siblings. *See* N.T. at 29-30. He also testified that if Mother is ever out of the house, Mother's brother and her boyfriend help take care of him. *See id.* at 30-31.

Based upon the trial court's credibility determinations and the witnesses' uncontradicted testimony, the third statutory element was met in this case. It is undisputed that it is not in the Child's best interest to be returned to Guatemala.

However, as noted, the trial court denied Mother's petition. Its rationale for doing so was that "findings relative to the Child residing in Guatemala with his [Paternal] [G]randparents are irrelevant to this case because they are not parties to this case. This is the reason that the [c]ourt denied [Mother's] Petition For Special Relief." Trial Court Pa.R.A.P. 1925(a) Statement, 4/24/25, at 2 (unnumbered). In its opinion, the court stated:

> Mother presented additional evidence relating to the Child's life residing in Guatemala with his [Paternal] [G]randparents. It would be improper for the [c]ourt to make the findings requested by [Mother] in this regard because the [Paternal] [G]randparents are not parties to this case. Therefore, findings related to them are irrelevant to deciding custody between Mother and Father.

T.C.O. at 6.

We agree that evidence related to the Child's life in Guatemala did not affect the custody decision between Mother and Father. However, we disagree that such evidence was not relevant to these proceedings. This evidence was relevant to determine Mother's petition for special relief. Most importantly, it

was relevant for the third element under **Velasquez**, *i.e.*, whether it was in the Child's best interest to be returned to the Child's country of nationality or last habitual residence. Thus, because Mother met all three elements under **Velasquez**, the court should have granted her petition for special relief.

We recognize that the facts of this case are slightly different than **Velasquez**. Here, Mother and Father were both located in the United States at the time of the custody proceedings. In **Velasquez**, Father was in Guatemala. **See Velasquez**, 321 A.3d at 883. However, this does not change our analysis because the trial court could still determine whether reunification between the Child and Father was viable and whether returning to Guatemala was in the Child's best interest, regardless of where Father lived at the time of the custody proceeding. **See id.** at 905 ("If analysis of the child's best interest results in a determination that sole legal and physical custody should be with the child's parent or other individual who resides in the United States, then the court can also make the predicate SIJ[S] judicial determination related to the child's best interest – that it is in [his] best interest not to be returned to [his] country of nationality or habitual residency."). Our reading of the three factors in **Velasquez** is that each of these elements is independent. The fact that the Child would not be returned to Guatemala even if custody was awarded to Father does not negate the trial court's authority to make the SIJS findings. Ultimately, the federal government will have to decide if the Child meets the criteria for SIJS, but Mother has met all the requirements for the predicate findings at the state court level.

In sum, we conclude that the trial court erred by denying Mother's petition for an order containing predicate SIJS determinations. *See Orozco*, 284 A.3d at 479 ("We conclude that the trial court abused its discretion. Mother specifically requested SIJ[S] findings both orally during the March 2019 hearing and in her October 2019 petition. The federal statutory scheme puts the factual determinations necessary for SIJ[S] [] solely within the purview of state courts. Yet the court flatly refused to issue the SIJ[S] order. In this posture, the refusal was an abuse of discretion."). The court's credibility determinations and factual findings, along with the uncontradicted evidence of record, show that there was sufficient support for the SIJS findings. Accordingly, we reverse the trial court, and remand for entry of an order granting Mother's petition for special relief and containing predicate SIJS determinations consistent with this memorandum. *See Velasquez*, 321 A.3d at 908-09. The court's order awarding sole legal and physical custody of the Child to Mother remains intact. *See id.* at 909.

Order denying special relief reversed. Custody order affirmed. Case remanded with instructions. Jurisdiction relinquished.

Judge Stabile joins. PJE Stevens concurs in result.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary


Date: 10/08/2025